UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARVIN TYRONE TARLETON,

                Petitioner,

vs.                                Case No. 3:15-cv-741-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

**ORDER**

## I.  INTRODUCTION

Petitioner Marvin Tyrone Tarleton challenges a 2011 Duval County conviction for robbery.  In his Petition (Doc. 1), he raises eight claims for habeas relief.  Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 18) with supporting Exhibits.[1]  Petitioner countered the Response by filing a Response to Respondents' Response to Order to Show Cause (Reply) (Doc. 19).  See Order (Doc. 9).

_____

[1] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

## II. CLAIMS OF PETITION

Petitioner seeks habeas relief on eight grounds: (1) ineffective assistance of counsel for failure to object to inadmissible hearsay from non-testifying witness April Hoffman; (2) ineffective assistance of counsel for failure to object to inadmissible hearsay from non-testifying witnesses James and Nynce [sic] Tarleton; (3) ineffective assistance of counsel for failure to object to inadmissible hearsay from non-testifying crime stoppers' witness; (4) ineffective assistance of counsel based on the cumulative effect of the errors and omissions of counsel presented in grounds one, two and three; (5) trial court error in failing to conduct a proper _Nelson_[2] hearing; (6) a Sixth Amendment Confrontation Clause claim based on Detective John Venosh's testimony that non-testifying witness April Hoffman identified Petitioner as the perpetrator of the crime after Ms. Hoffman viewed photographs taken during the robbery; (7) ineffective assistance of appellate counsel for failure to investigate, supplement the record with the transcripts of all hearings, and raise all constitutional violations and errors of law; and (8) a catch-all claim concerning due process rights, confrontation rights, and the ineffectiveness of trial and appellate counsel.

---

[2] _Nelson v. State_, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973) (addressing the procedure that must be followed when a criminal defendant in Florida requests dismissal of his court-appointed counsel).

Respondents urge this Court to deny the Petition. Response at 40. The Court will address the eight grounds raised in the Petition, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required in this Court.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors. Ledford, 818 F.3d at 642 (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the

Supreme Court—not Supreme Court dicta, nor the opinions of this Court." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014).

As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Terry Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." <u>Id</u>. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. <u>Id</u>. at 102, 131 S.Ct. 770.

<u>Pittman</u>, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[3] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at

---

[3] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), petition for cert. filed, (U.S. Sept. 29, 2017) (No. 17-512), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

1244 (quoting <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error). Indeed, in order to obtain habeas relief, "a state prisoner must

show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

## IV. PROCEDURAL HISTORY

In order to give historical context to the eight grounds presented in the Petition for habeas relief, the Court will provide a brief procedural history of the state criminal case. Petitioner was charged by information with robbery. Ex. A at 10. The state filed a notice of intent to classify Petitioner as an habitual felony offender. <u>Id</u>. at 13. Petitioner filed a Notice of Intention to Claim Alibi. <u>Id</u>. at 25.

On February 3, 2011, the trial court conducted a jury trial. Ex. B; Ex. B1; Ex. C; Ex. D. The jury returned a verdict of guilty. Ex. D at 392. Petitioner moved for a new trial, Ex. A at 99-100, and the trial court denied the motion. <u>Id</u>. at 134. Petitioner filed pro se motions for mistrial/new trial and to reverse judgment. <u>Id</u>. at 101-12. These were denied. <u>Id</u>. at 113; Ex. A1 at 175, 213-215.

On March 10, 2011, the trial court held a sentencing proceeding. Ex. A1 at 172-231. The court adjudicated Petitioner guilty as an habitual offender and sentenced him to a term of thirty years in prison. <u>Id</u>. at 230. The court entered judgment and sentence on March 10, 2011. Ex. A at 126-31.

Petitioner appealed his conviction.  Id. at 139.  Through counsel, Petitioner filed an appeal brief.  Ex. G.  The state filed an answer brief.  Ex. H.  On August 13, 2012, the First District Court of Appeal (1st DCA) affirmed per curiam.  Ex. I.  The mandate issued on August 29, 2012.  Ex. J.

On November 26, 2012, pursuant to the mailbox rule, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the 1st DCA.  Ex. M.  The 1st DCA denied the petition on its merits.  Ex. N.

On January 29, 2013, Petitioner filed a Motion for Postconviction Relief Pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. O at 1-49.  The circuit court ordered the state to file a written response.  Id. at 50-52.  The state filed its Response to Defendant's Motion for Post Conviction Relief.  Id. at 55-65.  The court granted Petitioner's request for leave to file an amended Rule 3.850 motion.  Ex. P at 228.  Petitioner proceeded on his Amended Motion for Postconviciton Relief.  Ex. O at 149-80. The trial court, in its Order Denying Defendant's Amended Motion for Postconviction Relief Pursuant to Florida Rule of Criminal Procedure 3.850, denied the Amended Motion.  Ex. P at 233-47. Exhibits "A" - "G" are attached to the order.  Id. at 247-347.

Petitioner appealed.  Ex. P at 348-49; Ex. R.  The state filed a notice that it would not file a brief.  Ex. S.  The 1st DCA, on October 3, 2014, per curiam affirmed.  Ex. T.  The 1st DCA denied

rehearing.  Ex. V.  The mandate issued on November 26, 2014.  Ex. W.

Meanwhile, on September 4, 2013, Petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court (FSC).  Ex. K.  On October 3, 2013, the FSC dismissed the petition, relying on Grate v. State, 750 So.2d 625 (Fla. 1999) (per curiam) (dismissing a petition for lack of jurisdiction).  Ex. L.

On November 17, 2014, Petitioner filed a petition for writ of habeas corpus alleging the ineffective assistance of appellate counsel in the 1st DCA.  Ex. AA at 1-105.  The 1st DCA transferred the case to the Duval County circuit court.  Id. at 106. Petitioner moved to transfer the case to the Eighth Judicial Circuit Court, but the Duval County Circuit Court denied the motion to transfer and construed the petition to be a motion for post conviction relief, finding Petitioner was seeking to collaterally attack his conviction.  Id. at 116.  The circuit court found the post conviction motion untimely and successive.  Id. at 117.  The court dismissed the motion with prejudice.  Id. at 118.  Petitioner appealed.  Id. at 139.  On April 29, 2015, the 1st DCA per curiam affirmed.  Ex. BB.  The 1st DCA denied rehearing on June 10, 2015. Ex. DD.  The mandate issued on June 26, 2015.  Ex. EE.

On November 18, 2014, Petitioner filed a petition for writ of habeas corpus alleging the ineffective assistance of appellate counsel in the 1st DCA.  Ex. X1.  The 1st DCA, on December 10, 2014, dismissed the petition as untimely and successive,

- 9 -

referencing Fla. R. App. P. 9.141(d)(5) and (d)(6)(C).  Ex. X.  The 1st DCA denied rehearing on January 15, 2015.  Ex. Z.

On January 6, 2015, Petitioner filed a petition for writ of habeas corpus in the Eighth Judicial Circuit.  Ex. FF at 1-13.  The Eighth Judicial Circuit dismissed the petition finding it lacked jurisdiction to hear collateral challenges of judgment and sentences from a different sentencing court.  _Id_. at 15-16. Petitioner appealed.  _Id_. at 17.  He filed an appeal brief.  Ex. GG.  The state answered.  Ex. HH.  On December 18, 2015, the 1st DCA per curiam affirmed.  Ex. II.  The 1st DCA denied rehearing on February 2, 2016.  Ex. KK.  The mandate issued on February 18, 2016.  Ex. LL.

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Grounds One, Two and Three

In grounds one, two, and three, Petitioner raises claims of ineffective assistance of trial counsel, complaining that counsel failed to object to the introduction of inadmissible hearsay testimony from April Hoffman, James and Nynce Tarleton, and a crime stoppers' witness, through the testimony of Detective John Venosh. Petition at 9-20.  As noted by Respondents, Petitioner raised these claims of ineffective assistance of counsel in grounds one, three and four, and two, respectively, of his Amended Rule 3.850 motion. Response at 16, 23, & 26.

These habeas grounds concern the trial testimony of Detective Venosh, a state's witness.  The state called Detective Venosh to

- 10 -

testify regarding his attempts to determine the identity of the individual in the photographs taken during the bank robbery. Ex. B1 at 241. On direct, the state elicited testimony that Detective Venosh found Petitioner's local family members and spoke with them. Id. When asked whether April Hoffman made an identification, Detective Venosh responded: "[s]he told me that she recognized the person in the photos as Ty Tarleton[;]" however, she refused to sign the photograph, stating she did not wish to be involved in the investigation. Id.

Petitioner contends the negative impact of this testimony was compounded by the state relying on the testimony in closing and rebuttal arguments. Petition at 9. The prosecutor, in closing, referenced Venosh's testimony concerning April Hoffman, claiming it was "still an identity" even though she did not want to get involved in the investigation. Ex. B1 at 310. The prosecutor asked the jury to take into consideration what she had to say. Id. at 312. On rebuttal, the prosecutor reminded the jury that they heard testimony "that another niece of his, April Hoffman, identified him also."[4] Id. at 343.

On cross, Detective Venosh testified that James Tarleton, after being shown the photographs, could not positively identify Marvin Tarleton. Id. at 255. Petitioner complains that on re-direct, Detective Venosh was again asked about his interaction with

---

[4] In his Petition, Petitioner states that April Hoffman is not related to him. Petition at 9.

Petitioner's brother James, without objection by defense counsel. When asked what James Tarleton said, Detective Venosh testified: "[h]e said it looked like it could be his brother, Marvin Tarleton, but he could not say it positively." <u>Id</u>. at 260. This line of questioning continued, with the prosecutor asking about James' wife, Nynce Tarleton,[5] and whether she identified Petitioner as the perpetrator in the photographs. <u>Id</u>. The following line of questioning transpired:

> Q    And did another relative at that same home see the photos also?
>
> A    We actually met at a different location. I believe his wife, she also was shown the photos. That is James' wife.
>
> Q    And did she say that it looked like the defendant?
>
> A    Her statement was it was possibly Marvin Tarleton and that --
>
> Q    Before you go into that, let me ask you this. When she says that -- so both James Tarleton and his wife both said that they thought the photo looked like Mr. Marvin Tarleton?
>
> A    They said it could be him.

<u>Id</u>. at 260-61.

Petitioner complains that the negative impact of this testimony was compounded by the prosecutor re-addressing the content of the testimony in his closing remarks. In closing, the

---

[5] Nynce Tarleton is referred to as "Vince" in the record before the Court.

prosecutor argued that family members were identifying Petitioner as the person in the photographs, and Vince [sic] Tarleton said it was possibly Marvin Tyrone Tarleton, and James Tarleton said the perpetrator "looked like he could be his brother." Id. at 311. The prosecutor asked the jury to take into consideration what they [James and Nynce Tarleton] had to say. Id. at 312.

In his third ground, Petitioner raises a similar claim, contending that counsel's failure to object to Detective Venosh's statements concerning the non-testifying crime stoppers' identification of Petitioner as the suspect in the surveillance photographs from the bank constituted ineffective assistance of trial counsel. Petition at 17. Detective Venosh, on direct, testified that a crime stopper tip led him to Marvin Tarleton, as the tip advised "it was possibly Marvin Tarleton[.]" Ex. B1 at 230. The prosecutor elicited this testimony without objection.

In order to prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Notably, the trial court referenced the applicable two-pronged standard in Strickland as a preface to addressing Petitioner's claim of ineffective assistance

of counsel.  Ex. P at 233-34.  The court not only recognized the applicable standard, it further noted that all that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel.  Id. at 234.  A defendant must not only show deficient performance on the part of counsel, a defendant must also demonstrate prejudice.  Id.  As the trial court explained: "[t]o demonstrate prejudice, a defendant must show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id. (quoting Strickland, 466 U.S. at 694).

Under the heading "Grounds One through Four: Hearsay and Confrontation Clause[,]" the trial court provided the definition of hearsay as set forth in the Florida Statutes.  Id. at 234.  The court also described the confrontation right, which forbids the admission of hearsay testimonial evidence unless the declarant is unavailable and the defendant had a previous opportunity to cross examine the declarant.  Id. at 235.  Finally, the court discussed what constitutes ineffectiveness in this context, particularly when it concerns the failure to object to the admission of hearsay statements, relating that the ultimate question is, without the admission of this testimony, is there a reasonable probability that there would have been a different jury verdict.  Id. at 236 (citation omitted).  With regard to prejudice, the court must ask

- 14 -

whether the introduction of the hearsay as corroborative evidence "was profoundly damaging" and the non-hearsay evidence "far from overwhelming." <u>Id</u>. at 236-37. (citation omitted).

Applying the applicable standards, the trial court recognized that the state conceded the point that Ms. Hoffman's statements, introduced at trial through Detective Venosh, were hearsay without an applicable exception. Ex. P at 239. But, the court did not find that, absent admission of this testimony, a reasonable probability exists that the jury verdict would have been different. <u>Id</u>. As such, the court held that Petitioner did not demonstrate prejudice, as he did not show absent the deficient performance by counsel, the result of the proceeding would have been different. <u>Id</u>. at 239-40.

The court reached the same conclusion with respect to the hearsay statements of James Tarleton and Nynce/Vince Tarleton. <u>Id</u>. at 241-42. Although admittedly defense counsel did not object to Detective Venosh's testimony, the court still concluded that Petitioner did not demonstrate prejudice. <u>Id</u>. at 242-43.

In addition, the trial court found that the trial testimony elicited from Detective Venosh concerning the crime stopper tip also constituted inadmissible hearsay.[6] <u>Id</u>. at 240. The court

---

[6] The trial court recognized that the police are generally permitted to testify that they acted on a tip, but are not permitted to expound on the details of the tip unless there is an exception to the hearsay rule, which in this instance, there was not. Ex. P at 240.

found defense counsel failed to object to the admissibility of the testimony. Id. at 240-41. Nevertheless, the court still concluded that Petitioner "has not shown a reasonable probability that, absent any deficient performance on the part of counsel, the result of the proceeding would have been different." Id. at 241.

In finding Petitioner failed to satisfy the prejudice prong of Strickland, the court relied heavily upon the substantial impact of the testimony of four witnesses who reviewed the bank's surveillance videotape and still shots taken on November 16, 2009. Id. at 238. Although the trial court liberally construed the testimony of Elva Braho, the bank teller, concluding she "identified the robber[,]" there was certainly strong, supporting testimony from the bank teller describing the robber and verifying that she selected Petitioner's picture from the photospread. Id. Notably, Ms. Braho, the victim, picked Petitioner's photograph out of the photospread prior to trial. Ex. B1 at 166, 176. At trial, Ms. Braho explained that "[i]t was the eyes that gave it away more than anything else." Id. at 176. She picked the same photograph in front of the jury. Id. at 177. After the video surveillance tape was played for the jury, Ms. Braho confirmed that the person depicted in the tape was the individual she had just described for the jury. Id. at 179.

Additionally, the court noted that Petitioner's stepmother (Joyce Tarleton), niece (Ashley Hoffman),[7] and ex-wife (Franchesca Swierz) all identified Petitioner as the individual who robbed the bank. Ex. P at 238-39. See Ex. B1 at 192-96; 212-17; 219-21. Not only did the jury hear their testimony, the jury viewed the surveillance tape and still photographs from the bank's recording of the robbery. Ex. P at 239. The jury also had the opportunity to compare and review Petitioner's photograph taken during the booking process. Id.

Although recognizing that the testimony concerning the crime stopper tip constituted inadmissible hearsay, the court found, in light of the overwhelming evidence presented by the state's four identifying witnesses, "it is far from likely that the statement at issue would have resulted in a successful motion for mistrial." Id. at 241. Finally, in addressing Plaintiff's claim that his counsel was ineffective for failing to object to the testimony of Nynce/Vince and James Tarleton, the court again relied on the fact that four witnesses gave testimony supporting the conclusion that Petitioner was the person who committed the robbery. Id. at 242. As such, the court concluded that Petitioner "had not proven that, absent any deficient performance on the part of counsel, the jury would have reached a different result." Id. at 242-43.

---

[7] Petitioner does not assert that Ashley Hoffman is unrelated to him. Ashley Hoffman described Petitioner as her uncle by marriage. Ex. B1 at 210.

In sum, with regard to the prejudice prong, the trial court held that Petitioner failed to demonstrate that, but for his counsel's actions in failing to object, the outcome of the proceedings would have been different. The court determined that this is especially the case in light of the substantial evidence presented at trial against Petitioner.[8] Thus, the court made the finding that if there had been an objection and exclusion of the hearsay evidence, it would not have negated the other significant evidence offered against Petitioner. The 1st DCA affirmed the decision of the trial court. Ex. T.

The decision to deny these grounds is not inconsistent with Strickland. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." Marshall, 828 F.3d at 1290 (quoting Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)). This standard is extremely difficult to meet, and even a strong case for habeas relief will not prevail as long as the state court's contrary conclusion was reasonable.

The 1st DCA affirmed the trial court's decision to reject these claims of ineffective assistance of counsel. The 1st DCA did not give reasons for its summary affirmance; however, if there was any reasonable basis for the court to deny relief, the denial must

---

[8] The court described "near overwhelming evidence" presented by the state's four identification witnesses. Ex. P at 239.

be given deference by this Court.  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 187-88 (2011).

There is a qualifying state court decision and AEDPA deference is warranted.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on grounds one, two and three because the state court's decision was not contrary to clearly established federal law, <u>Strickland</u> and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

## B.  Ground Four

In ground four, Petitioner claims the ineffective assistance of counsel based on the cumulative effect of the errors and omissions of counsel presented in grounds one, two, and three.  Petition at 21.  Since none of Petitioner's grounds claiming ineffective assistance of counsel provide a basis for habeas relief, the cumulative effect of these grounds certainly does not provide any foundation for granting habeas relief.

When Petitioner presented this ground to the trial court in ground six of his amended post conviction motion, the court rejected it, finding:

> In Ground Six, Defendant contends the cumulative effect of counsel's errors entitles him to postconviction relief.  "[A] claim of

- 19 -

> cumulative error will not be successful if a
> petitioner fails to prove any of the
> individual errors he alleges." <u>Suggs v.</u>
> <u>State</u>, 923 So.2d 419, 441 (Fla. 2005).
> Because all of Defendant's grounds for relief
> have been denied, Defendant's claim of
> cumulative error must be similarly rejected.
> <u>See</u> <u>Mansfield v. State</u>, 911 So.2d 1160, 1168
> n.6 (Fla. 2005) ("Because we find that none of
> Mansfield's other claims have merit, we reject
> Mansfield's cumulative-error argument.").
> Thus Ground Six is denied.

Ex. P at 246. The First District Court of Appeal affirmed the
decision per curiam. Ex. T.

Upon review, the 1st DCA's decision is entitled to deference
under AEDPA. Petitioner is not entitled to relief on ground four
of the Petition because the state court's decision was not contrary
to clearly established federal law, did not involve an unreasonable
application of clearly established federal law, and was not based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings.

Alternatively, this "cumulative effect" claim has no merit.
If Petitioner's ineffective assistance of counsel claims are
insufficient individually, raising them cumulatively does not
render them sufficient. <u>Robertson v. Chase</u>, No. 1:07-CV-0797-RWS,
2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (citations
omitted), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>by</u> No. 1:07-CV-797-RWS,
2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), <u>aff'd</u> <u>by</u> 506 F. App'x 951
(11th Cir. 2013), <u>cert.</u> <u>denied</u>, 134 S.Ct. 93 (2013). As such, the

Court finds the cumulative deficiencies of counsel claim is without

merit:

> As set forth above, [Petitioner] has not
> demonstrated error by trial counsel; thus, by
> definition, [Petitioner] has not demonstrated
> that cumulative error of counsel deprived him
> of a fair trial. See Yohey v. Collins, 985
> F.2d 222, 229 (5th Cir. 1993) (explaining that
> because certain errors were not of
> constitutional dimension and others were
> meritless, petitioner "has presented nothing
> to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied,

531 U.S. 849 (2000).

In this regard, since there were no errors of constitutional

dimension, the cumulative effect of any errors would not subject

Petitioner to a constitutional violation. See Miller, 200 F.3d at

286 n.6. Therefore, the Court finds that Petitioner is not

entitled to relief on the basis of this claim of ineffective

assistance of counsel alleging the cumulative errors of counsel.

## C. Ground Five

In his fifth ground, Petitioner contends the trial court erred

by failing to conduct a proper Nelson hearing, violating

Petitioner's rights under the 1st, 5th, 6th, and 14th Amendments to

the United States Constitutional as well as portions of the Florida

Constitution. Petition at 27. Respondents note that Petitioner

claimed the trial court erred by not conducting an adequate Nelson

inquiry in issue II of his direct appeal. Response at 30. Ex. G

at 26.  The 1st DCA per curiam affirmed Petitioner's judgment and sentence, rejecting this ground without written opinion.  Ex. I.

"Any complaint about the lack of a proper <u>Nelson</u> inquiry raises an issue of state law that is not cognizable in this proceeding."  <u>Ortiz v. McNeil</u>, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010).  The Court must be mindful that the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).  Therefore, this Court will not reexamine state-court determinations on issues of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Since this ground presents a state law claim concerning a ruling by the trial court after a <u>Nelson</u> inquiry, Petitioner is not entitled to federal habeas corpus relief as there has been no breach of a federal constitutional mandate.  This Court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), <u>cert</u>. <u>denied</u>, 504 U.S. 944 (1992).

Therefore, Petitioner's claim raised in ground five is not cognizable before this Court in this habeas proceeding.  Indeed,

> The United States Supreme Court has never defined what procedure should be used when an indigent defendant alleges that his court-appointed attorney is not competent to represent him.  <u>See</u> <u>Ortiz v. McNeil</u>, No.

3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. December 2, 2010) ("No case has been cited for the proposition that the federal constitution mandates the Nelson procedure, and this court has found none."); see also United States v. Garey, 540 F.3d 1253 (11th Cir. 2008). And as previously set forth, federal habeas corpus relief is available to correct only federal constitutional injury. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68; Barclay, 463 U.S. at 958-659. Petitioner's claim that the trial court failed to conduct a sufficient inquiry as required by Nelson in addressing his motion to discharge counsel is thus solely a matter of state procedural law, not a matter of federal Constitutional law. See, e.g., Ortiz v. Sec'y, Dep't of Corr., No. 8:11-CV-2410-T-33MAP, 2013 WL 787656, at *11 n. 7 (M.D. Fla. March 4, 2013); Bembo v. Tucker, No. 3:11cv132/MCR/EMT, 2012 WL 6213455, at *8 n. 8 (N.D. Fla. October 29, 2012), Report and Recommendation Adopted by WL 6214024 (N.D. Fla. Dec[.] 13, 2012); Maye v. Tucker, No. 4:08-cv-577-SPM/GRJ, 2011 WL 6817938, at *8-9 (N.D. Fla. Oct. 26, 2011); Report and Recommendation Adopted By, 2011 WL 6817929 (N.D. Fla. Dec. 28, 2011); Allen v. Buss, No. 4:09cv85-MP/W CS, 2011 WL 2532766, at *3 (N.D. Fla. May 25, 2011), Report and Recommendation Adopted By, 2011 WL 2531189 (N.D. Fla. June 24, 2011); Kimbrough v. Buss, No. 3:08cv552-LAC/MD, 2011 WL 2414879, at *11 (N.D. Fla. May 20, 2011), Report and Recommendation Adopted By, 2011 WL 2374385 (N.D. Fla. June 10, 2011); Ortiz v. McNeil, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. December 2, 2010). As such, it is not cognizable in this proceeding.

Obando v. Jones, No. 14-CIV-21606, 2015 WL 4112087, at *23 (S.D. Fla. June 16, 2015) (footnote omitted), report and recommendation adopted in part by No. 14-21606-CIV, 2015 WL 4139061 (S.D. Fla. July 8, 2015).

## D.  Ground Six

In his sixth ground, Petitioner raises a Sixth Amendment Confrontation Clause claim based on Detective John Venosh's testimony that non-testifying witness April Hoffman identified Petitioner as the perpetrator of the crime after Ms. Hoffman viewed photographs taken during the robbery.  Petition at 29-30. Respondents contend that the claim raised in ground six is unexhausted and procedurally defaulted.  Response at 30-35.

This Court must ask whether the constitutional claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).  The record shows that Petitioner did raise a confrontation claim on direct appeal.  In the Table of Authorities, there is a specific reference to <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), a seminal Supreme Court Confrontation Clause case.  Ex. G at ii.  Petitioner presented the substance of his confrontation claim under Issue I:

> [T]his Court should consider another error in this case.  The detective was permitted to testify that April Hoffman, another family member through Appellant's estranged stepmother, had positively identified Appellant from the photos of the robbery. (V4-241-243).  **Appellant did not have an opportunity to confront that witness in court, as she did not testify, which was in violation of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).**

Ex. G at 24-25 (emphasis added and footnote omitted).[9]

Based on the above, Petitioner alerted the state courts to the federal nature of his confrontation claim by relying on Crawford and his specific reference to the denial of his confrontation rights in Issue I. As such, the confrontation claim was fairly presented to the 1st DCA in the direct appeal brief. The state court was certainly alerted to the federal nature of the claim through Petitioner's reliance on Crawford. See Crawford, 541 U.S. at 42 ("The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' We have held that this bedrock procedural guarantee applies to both federal and state prosecutions. Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)."). Therefore, the Court rejects Respondents' assertion that Petitioner failed to exhaust the confrontation claim.

The Court finds that Petitioner adequately exhausted his confrontation claim by presenting it on direct appeal. The 1st DCA affirmed per curiam. Ex. I. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any

---

[9] In the footnote to this claim, there is reference to defense counsel's failure to object to the detective's testimony regarding April Hoffman's identification, admitting a failure to preserve the issue for appellate review. Thus, the confrontation claim was apparently presented as one of fundamental error.

indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. With regard to the confrontation claim, he has not accomplished that task.

Since there is a reasonable basis for the court to deny relief, the decision must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief based on this claim. Thus, ground six is due to be denied.

Alternatively, to the extent Petitioner raised and exhausted a Confrontation Clause claim, he is not entitled to habeas relief. An explanation follows.

The Confrontation Clause "bars the admission of 'testimonial' hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." United States v. Berkman, 433 F. App'x 859, 863 (11th Cir. 2011) (per curiam) (citing Crawford, 541 U.S. at 68). The Eleventh Circuit succinctly stated the confrontation right secured by the Sixth Amendment:

> The Sixth Amendment states, in relevant
> part: "In all criminal prosecutions, the
> accused shall have the right ... to be
> confronted with the witnesses against him."
> U.S. Const. amend. VI. This is known as the
> Confrontation Clause and is made applicable to
> the States through the Fourteenth Amendment's
> Due Process Clause. <u>Pointer v. State</u>, 380 U.S.
> 400, 403-06, 85 S.Ct. 1065, 1068-69, 13
> L.Ed.2d 923 (1965).

<u>Kormondy v. Sec'y, Fla. Dep't of Corr.</u>, 688 F.3d 1244, 1269 n.26
(11th Cir.), <u>cert</u>. <u>denied</u>. 568 U.S. 1051 (2012).

Again, the trial court recognized that the state conceded the point that Ms. Hoffman's statements, introduced at trial through Detective Venosh, were hearsay without an applicable exception. Ex. P at 239. But, the court did not find that, absent admission of this testimony, a reasonable probability exists that the jury verdict would have been different. <u>Id</u>. The court concluded that that Petitioner failed to demonstrate prejudice. <u>Id</u>. at 239-40. In making this determination, the court found "Ms. Hoffman's statements are inconsequential and far from damaging when considering the testimony presented at trial in its entirety." <u>Id</u>. at 239. Significantly, the court stressed the impact of the testimony of the state's four trial witnesses who provided identification testimony, "near overwhelming evidence that Defendant was the bank robber[,]" compared to "the few references to Ms. Hoffman's statements made during the course of Defendant's trial." <u>Id</u>.

Although the appropriate inquiry in a confrontation claim is focused on the particular witness at issue, "an otherwise valid conviction should not be set aside if the error was harmless beyond a reasonable doubt." Sec'y, Fla. Dep't of Corr. v. Baker, 406 F. App'x 416, 423 (11th Cir. 2010) (per curiam) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) citing Chapman v. California, 386 U.S. 18 (1967)). Determining harmlessness depends on a variety of factors, including the importance of the particular witness's testimony and whether or not there is the presence or absence of corroborating or contradictory evidence. Id. (citation omitted).

The trial court, in denying the amended Rule 3.850 motion, acknowledged that Petitioner relied on the Confrontation Clause and referenced the Crawford case and its progeny. Ex. P at 235. The trial court also noted cases that employed harmless error analysis to a trial court's admission of out-of-court statements. Id. at 236. In addressing ground one of the amended motion, the court specifically stated that Petitioner claimed a violation of his rights under federal and state Confrontation Clauses. Id. at 237.

The trial court, in its assessment of Petitioner's claim, emphasized the fact that Detective Venosh's testimony concerning April Hoffman's identification of Petitioner was "inconsequential and far from damaging" in light of the very strong testimony of the four identification witnesses who testified at trial. Id. at 238-39. The court also found that there was strong corroborating evidence, including the surveillance tape, the stills, and the

- 28 -

booking photograph of Petitioner, all reviewed by the jury. The 1st DCA per curiam affirmed the decision of the trial court denying the amended post conviction motion. Ex. T.

Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. With regard to this confrontation claim, he has not accomplished that task.

Since there is a reasonable basis for the court to deny relief, the denial must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of Crawford, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief based on his confrontation claim. Thus, ground six is due to be denied.

### E.  Ground Seven

Petitioner raises a claim of ineffective assistance of appellate counsel in his seventh ground for habeas relief. Petition at 33. Petitioner claims counsel failed to investigate, supplement the record for all hearings, and raise constitutional

violations and errors of law.  <u>Id</u>. at 33-34.  In the supporting
facts, Petitioner complains that appellate counsel failed to raise
the confrontation issue regarding the testimony provided concerning
the crime stopper tip and statements made by James Tarleton, Shawn
Tarleton, Joyce Tarleton, and April Hoffman.  <u>Id</u>. at 34-37.

Respondents, in response to this claim, assert that it is
procedurally defaulted.  Response at 35.  This particular ground
was presented in the second petition for writ of habeas corpus
alleging ineffective assistance of counsel.  Ex. X1.  The 1st DCA
dismissed the petition as untimely and successive, relying on
Florida Rule of Appellate Procedure 9.141(d)(5) (time limits) and
(d)(6)(c) (second or successive).  Ex. X.

It is a well accepted axiom that a petition for writ of habeas
corpus should not be entertained unless the petitioner has first
exhausted his state court remedies.  <u>Castille v. Peoples</u>, 489 U.S.
346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  A procedural
default arises "when 'the petitioner fails to raise the [federal]
claim in state court and it is clear from state law that any future
attempts at exhaustion would be futile.'"  <u>Owen v. Sec'y, Dep't of</u>
<u>Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v.</u>
<u>Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 558
U.S. 1151 (2010).  There are, however, allowable exceptions to the
procedural default doctrine; "[a] prisoner may obtain federal
review of a defaulted claim by showing cause for the default and
prejudice from a violation of federal law."  <u>Martinez v. Ryan</u>, 566

U.S. 1, 10 (2012) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  If cause is established, a petitioner is required to demonstrate prejudice.  In order to demonstrate prejudice, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."  <u>Owen</u>, 568 F.3d at 908.

In the alternative, a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).  This gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert</u>. <u>denied</u>, 569 U.S. 1004 (2013).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).  Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

To demonstrate cause, Petitioner must show that some objective factor external to the defense impeded his effort to properly raise the claim in state court.  <u>Wright v. Hopper</u>, 169 F.3d 695, 703

(11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).  With respect to ground seven, Petitioner claims the impediment to his timely filing his state petition was the denial of the provision of the sentencing transcript up until less than sixty days prior to the expiration of the window to file his claim of ineffective assistance of counsel in his second state habeas petition. Petition at 41.  Unfortunately for Petitioner, this argument carries no weight because the sentencing transcript is actually contained in the record on direct appeal, Ex. A1, and Petitioner referenced the six bound volumes of the record in his initial petition for writ of habeas corpus filed in the 1st DCA.  Ex. M at 1.  Also of note, the pro se motions for mistrial, new trial and to reverse judgment are also included in the record on appeal.  Ex. A at 99-112.  Thus, some external factor did not impede Petitioner's efforts to properly and timely raise his claim in the state courts.

Ground seven is unexhausted and procedurally defaulted.  As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, this ground is due to be denied as procedurally barred.

### F.  Ground Eight

In his final ground for habeas relief, Petitioner presents a catch-all claim alleging deprivation of his confrontation rights, denial of due process of law, and the ineffective assistance of both trial and appellate counsel.  Petition at 45.  To the extent

Petitioner exhausted some of these claims and they were properly before this Court, the issues have been addressed. To the extent Petitioner is attempting to raise new grounds for habeas relief, Respondents contend the claims are unexhausted and procedurally defaulted. Response at 39.

Petitioner, in his Reply, asserts that he attempted to exhaust these claims in both the Fourth and Eighth Judicial Circuit Courts through petitions for writ of habeas corpus, but both of the circuit courts "chose to procedurally bar the petitioner." Reply at 22. More specifically, he complains that both courts wrongly construed his petitions as post conviction motions pursuant to Rule 3.850. Id.

The record shows the following. On November 17, 2014, Petitioner filed a petition for writ of habeas corpus in the 1st DCA. Ex. AA. The 1st DCA transferred the case to the Duval County Circuit Court. Id. at 106. Petitioner moved to transfer the case to the Eighth Judicial Circuit Court, but the Duval County Circuit Court denied the motion to transfer and construed the petition to be a motion for post conviction relief, finding Petitioner sought to collaterally attack his conviction. Id. at 116. The circuit court found the post conviction motion untimely and successive and dismissed the motion with prejudice. Id. at 117-18. Petitioner appealed. Id. at 139. The 1st DCA per curiam affirmed. Ex. BB.

On January 6, 2015, Petitioner filed a petition for writ of habeas corpus in the Eighth Judicial Circuit Court. Ex. FF at 1-

13.   The Eighth Judicial Circuit Court dismissed the petition finding it lacked jurisdiction to hear collateral challenges of judgment and sentences from a different sentencing court.   <u>Id</u>. at 15-16.  Petitioner appealed.  <u>Id</u>. at 17-18.  The 1st DCA per curiam affirmed.  Ex. II.

In both petitions, Ex. AA & Ex. FF, Petitioner attempted to collateral attack his judgments and sentences.  He claimed he was illegally detained because his confrontation rights were violated. <u>See</u> Ex. AA at 116; Ex. FF at 1-13.   The Fourth Judicial Circuit Court found the construed post conviction motion untimely and successive, while the Eighth Judicial Circuit Court found it lacked jurisdiction to hear Petitioner's challenge to his judgment and sentences from a different circuit court.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. **These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.** <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct. 2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. **A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a**

> **nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed.** <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. ----, ----, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. at 9–10 (emphasis added).

Based on the doctrine of procedural default, this Court will not review the merits of the claims raised in ground eight as the state court declined to hear them because Petitioner failed to abide by state procedural rules. Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground eight. The Petition is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[10] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of January, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 1/12
c:
Marvin Tyrone Tarleton
Counsel of Record

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.